Gkeen, Judge,
delivered the opinion of the court:
This case grows out of the construction of a nitro-powder plant by the defendant under the direction of the Thompson-Starrett Company, as an agent for the United States. In the course of the operations connected with the construction of this plant the Thompson-Starrett Company had a large number of telegraphic messages sent over the linep of the plaintiff. Subsequent to beginning this construction the *49 defendant acting under its war powers took over the control and operation of the telegraph lines of plaintiff, and entered into a contract with plaintiff to compensate it for this action on terms stated therein. Part of the telegrams in question were sent before the Government took control of the lines of the plaintiff, and part during the time when these lines were operated by the Government, but the time when they were sent is not material to the decision of the case. No payment was made for any but a comparatively small number of the telegrams so sent, but the defendant admits that it is properly chargeable with the tolls for such telegrams as have not been paid for at what is known as the “ Government rate ”; that is, the rate fixed by the Postmaster General in pursuance of the statute, and the defendant has at all times been ready and willing to pay for the same at such rate. The plaintiff claims that the defendant should pay for sending these telegrams at the “ legal commercial rate.” There is no dispute as to what the Government rate is, or the commercial rate. The issue in the ca,se is which rate should be paid by the defendant for the telegrams in question. *
The plaintiff in its amended petition sets up three causes of action, all based primarily upon services rendered in transmitting the telegrams to which reference has been made.
The first cause of action pleads in substance that the defendant is estopped to deny its liability for the legal commercial rate upon the telegrams in question by reason of what is alleged to be a representation that these accounts were valid and collectible in the sums charged upon the books, and that the plaintiff relied upon such representation.
The second cau,se of action is based upon an alleged mutual mistake made in the settlement between the parties.
In a third cause of action the plaintiff seeks to recover from the defendant the reasonable value of the services rendered in transmitting telegrams before Government control, and also after control had been taken by the Government.
The third cause of action will be considered first, for if it is decided in favor of the plaintiff, it will be unnecessary to consider the other two.
*50 The defendant admits that it is liable on account of the telegrams having been sent by its agent, the Thompson-Starrett Company, and the question in connection with the third account is whether the Thompson-Starrett Company acted in such a capacity that the defendant is entitled to what is considered the Government rate.
The so-called Government rates are fixed annually by the Postmaster General pursuant to section 2 of the post roads act of July 24, 1866 (14 Stat. 221), and this statute provides for the transmission of messages not only by the departments of the Government of the United States, but by their officers and agents. The act has universally been construed to apply to all messages sent on official business of the Government where solely in its interest and behalf, and chargeable to the United States.
That the Thompson-Starrett Company was not only an agent of the Government but merely an agent so far as the sending of these telegrams was concerned, seems almost too clear for argument or discussion. Under the contract between it and the Government it was “ authorized to make, as agent for the United States of America, all contracts for services, labor, supplies, material, equipment and facilities necessary for use for the benefit of the ‘ plant,’ ” and it was further provided that as construction manager it should “ make all contracts, purchases, and other arrangements for the performance of this contract in its capacity as agent for the United States and without liability on its part under any contracts or purchases so made.”
A very simple test will determine the question here involved. Either the Thompson-Starrett Company was liable for the expense of these telegrams; or the Government, by reason of the telegrams having been sent in its behalf, by its agent, and solely in its interest and upon its responsibility, was liable. If this does not establish such an agency as to entitle the defendant to the Government rate it is difficult to see what would. There is no claim that the Thompson-Starrett Company was liable and the agency of this company was such as to entitle the defendant to the *51 Government rate unless some one or more of the other pleas of the plaintiff are established.
Turning now to the first cause of action stated in the petition, it appears, as before stated, that it sets up an estoppel against the claim for the Government rate. This alleged estoppel is based on the settlement made between the parties. The evidence shows that .the plaintiff through its president, submitted to the Postmaster General, acting for the defendant, a proposition to accept $921,511 “ in full and complete satisfaction of all claims the company may have under the contract ” which existed between the defendant and the plaintiff when the Government took over the operation of the telegraph system. Attached to the letter which contained this proposition was a statement set out in Finding XIV which shows the calculation through which this particular sum of $921,511 was obtained. An examination of this statement in connection with the other evidence makes it plain that there was included in the first item thereof, to wit, “ Revenue from transmission,” the sum of $50,842.15, being the amount of tolls unpaid on messages sent during the period of Government control. So also when the Government took over the system of the telegraph company there was charged against the Thompson-Starrett Company on the books of the plaintiff the sum of $44,440.37 as tolls upon ■the messages sent by the Thompson-Starrett Company prior to the time of Government operation. So far as the bookkeeping is concerned, the whole matter may be summed up by .saying that both prior to and during the period of Government control the messages sent by the Thompson-Star-rett Company were charged against that company on the books of account at the legal commercial rate. When the Government took over the telegraph system it received the books of .account with these charges thereon and when the system was turned back to the telegraph company the accounts were turned back in the same manner. All through this period the Government was insisting through its agents that it was entitled to the special rate. At the very start, •the Thompson-Starrett Company presented the telegrams *52 upon a special form that indicated that the telegrams were accepted to be paid for at the Government rate. Plaintiff refused to accept the telegrams in this form and instead charged the regular rate. Even as to the telegrams for which payment was made during Government control, there was an express understanding that if it should subsequently be determined that the defendant was entitled to the Government rate the overpayment should be refunded.
Conceding for the sake of the agreement that the Government might be subject to an estoppel, it must be borne in mind that an equitable estoppel always involves some act, representation, or admission, whereby the party claiming the benefit of it was misled into acting to his disadvantage, but there is no evidence of any act or statement whereby the plaintiff was misled. The claim on behalf of the Government was continuous to the last and there was nothing in the proceedings relating to the settlement which indicated any intention to waive or abandon it. The letter of the president of the plaintiff stated that the proposition to accept a definite amount was made “ For the purpose of arriving at a quick settlement of accounts and to avoid the delay and expense, * * * the company is willing * * * to accept the sum of $921,511 * * * in full and complete satisfaction of all claims the company may have under the contract.” The reply of the Postmaster General, divested of all verbiage, amounted merely to an acceptance of this proposition and nothing more. The only thing that was said with reference to the accounts in the course of the settlement is found in the plaintiff’s letter which contained the proposition:
“ That the accounts receivable and accounts payable on the books of the company as of midnight July 31, 1918, and the corresponding accounts on the books of the Federal Telegraph Administration as of midnight July 31, 1919, will be passed from one to the other at their face value.”
We do not think that in a contract of settlement such a statement is sufficient to establish the right of the plaintiff to recover the full commercial rate. On the contrary, it would seem to imply that it was understood that there was *53 a dispute as to some of these items which must be left for the courts to determine or to be settled otherwise. This agreement was made for the purposes of the settlement alone. The whole tenor of plaintiff’s proposition indicated that the plaintiff was willing to make concessions in order to obtain a “ quick settlement,” and the settlement only related to the operating contract between the plaintiff and defendant. The plaintiff can not now go further and claim •that- not only the amount due under the operating contract but other matters were settled at the same time, such as the rate to be paid for the telegrams. We find that no estoppel was created.
In the remaining cause of action the plaintiff seeks to recover on the ground of mutual mistake, if (according to the language of the petition) the settlement did not imply .a warranty entitling the plaintiff to recover the commercial rate.
It is quite possible that at the time the proposition of settlement was made on behalf of the plaintiff it was thought by the president of plaintiff that if the accounts should “ be passed from one to the other at their face value ” it would even matters between the parties regardless of how the dispute as to the rate was finally determined, whereas it is now quite evident that such is not the case. But a mistake of this character, even if it were mutual, is not such a mistake that the courts will grant relief against it. It is a mistake of law, not of fact; and the same is true even if the plaintiff’s officers mistakenly believed that the provision above set out established the validity of the accounts in question at the commercial rate. Beyond this it should be said that in either case there is no evidence that the mistake, if any, was mutual. On the contrary so far as the evidence goes, it tends to show that, on behalf of the Government, it was insisted from first to last that it was entitled to the special rate.
There remains for disposition the counterclaim of the defendant. We are unable to see why the same rules would not apply. The money that was paid as tolls on these telegrams while the Government was in control eventually went *54 into the Treasury of the plaintiff, and it was paid with the express understanding that .if it should subsequently be found that the Government rate was applicable thereto the overpayment should be refunded. The counterclaim should therefore be sustained. The Thompson-Starrett Company paid for these telegrams, as agents for the Government, $1,738.79. At Government rates the charge would have been $695.52. The defendant, therefore, is entitled to recover the difference, which is $1,043.27, and in making up final judgment it is entitled to have this sum credited on the amount admitted to be due on the telegrams which were not paid for, which is $44,147.48, leaving a net amount due from the defendant to the plaintiff of $43,104.21, for which judgment will be entered in favor of the plaintiff.
Moss, Judge; Geaham, Judge; and Booth, Chief Justice, concur.