**BAUDIER MARINE ELECTRONICS, SALES AND SERVICE, INC., et al.**

v.

**The UNITED STATES.**

No. 63–84C.

United States Claims Court.

Sept. 6, 1984.

Alexander W. Dann, Jr., Memphis, Tenn., attorney of record, for plaintiffs. Alexander W. Dann, Jr., P.C., Memphis, Tenn., of counsel.

Robert G. Giertz, Senior Trial Counsel, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. David M. Cohen, Director, Washington, D.C.

## OPINION ON PLAINTIFFS' AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

*Statement*

This is a suit by eight subcontractors of a defaulted prime contractor with the United States, who seek to have the United States held liable for their uncompensated goods and services because the United States failed to verify the financial responsibility of the surety company on the prime contractor's payment bond prior to awarding the contract, prior to giving notice to proceed to the contractor and prior to the time when the plaintiffs furnished their goods and services without knowledge of the financial irresponsibility of the surety.

On September 30, 1982, the Army Corps of Engineers (Corps) awarded a contract for certain maintenance dredging in Jefferson Parrish, Louisiana, in the sum of $1,200,000 to the Miken Construction Company (Miken), the low bidder. Prior to the award, the Corps had conducted a preaward survey of Miken to determine if it was a responsible bidder, and had made a favorable determination of such responsibility. The Corps verified that Miken's potential surety, listed as the New Hampshire Insurance Company, was a qualified surety. On September 30, 1982, the Corps by letter requested Miken for its performance and payment bonds, as required by the solicitation, and on or about October 5, 1982, Miken submitted to the Corps bonds signed by the New Hampshire Insurance Company as surety.

Thereafter the Corps submitted the bonds to the United States Army Legal Service Agency in Washington, D.C., for review of their legal sufficiency in accordance with applicable regulations. Without waiting for the results of such review, on October 25, 1982, the Corps issued a notice to proceed to Miken. However, on December 28, 1982, the Army Legal Service Agency advised that the bonds were not approved for legal sufficiency because the New Hampshire Insurance Company, which had signed the surety bonds, was not

in fact the New Hampshire Insurance Company of Manchester, New Hampshire, which was included on the approved list of surety companies approved by the Treasury Department.

Upon receipt of this information, the Corps made several unsuccessful attempts to have Miken provide a new and proper surety bond. As a result, on March 18, 1983, it terminated Miken's contract for default.

Meanwhile, between October 1982 and February 1983, the various plaintiffs furnished equipment, materials and services to Miken, for which they claim $528,268 as due and unpaid. During November and December 1982, the Corps made two progress payments to Miken in the total amount of $118,807, but it is not clear whether any portion of this was used to pay any of the subcontractors.

Plaintiffs' claims against the United States are based on the theory that they entered into their subcontracts and extended credit to Miken in reliance upon statutory and contractual provisions that the Corps would require a proper and valid payment bond from Miken prior to authorizing its prosecution of the work; that plaintiffs are intended third-party beneficiaries of the contract between Miken and the United States; and that the Corps breached an implied warranty to plaintiffs that it would see to it that a valid payment bond would be furnished prior to the contract award in order to protect the subcontractors.

### Discussion

Although the plaintiffs' claims are deserving of sympathy, there is no basis upon which the United States may be held liable to reimburse them for their losses.

The jurisdictional basis for this suit must be found in the Tucker Act, 28 U.S.C. § 1491, which, insofar as pertinent, provides as follows:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

■ Plaintiffs may not properly found jurisdiction over this action upon an act of Congress. The only kind of statute which would avail plaintiffs would be one providing for payment of compensation or money damages by the United States. For, as the court stated in *United States v. Testan,* 424 U.S. 392, 398, 401–02, 96 S.Ct. 948, 953, 954–55, 47 L.Ed.2d 114 (1976):

> The Tucker Act * * * is * * * only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages * * * the Act merely confers jurisdiction upon [the court] whenever the substantive right exists.

> \* \* \* \* \* \*

> Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim—whether it be the Constitution, a statute, or a regulation—does not create a cause of action for money damages unless * * * that basis "in itself * * * can fairly be interpreted as mandating compensation by the federal government for the damage sustained."

And *see also United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983) and *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967).

Plaintiffs claim that the Miller Act, 40 U.S.C. § 270a, does create such a substantive right in favor of unpaid subcontractors. Insofar as pertinent that statute provides:

> (a) Before any contract, exceeding $25,000 in amount for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States * * * upon

the award of the contract to such person, who is hereinafter designated .as "contractor":

\* \* \* \* \* \*

(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person.

■ However, the Miller Act does not serve plaintiffs' purpose in this suit, for it does not provide that if the United States fails to enforce that provision, or is duped into approving an unqualified surety and allowing the contractor to go ahead with the performance of the contract, the United States will compensate or be liable to unpaid subcontractors. In *United Electric Corp. v. United·States,* 227 Ct.Cl. 236, 240 n. 4, 647 F.2d 1082, 1084 n. 4 (1981), *cert. denied,* 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1982), the court stated:

It is plain that the Miller Act itself does not mandate compensation by the United States to a subcontractor within the coverage of 28 U.S.C. § 1491 (*cf. United States v. Testan,* 424 U.S. 392 [96 S.Ct. 948, 47 L.Ed.2d 114] (1976)) and that plaintiff has no claim directly under the Miller Act for relief from this court.

And *see also Barrett v. United States,* 177 Ct.Cl. 380, 383, 367 F.2d 834, 836 (1966); and *United States Fid. & Guar. Co. v. United States,* 201 Ct.Cl. 1, 10, 475 F.2d 1377, 1382 (1973).

■ Plaintiffs' claim that the subcontractors have a right of action in this court apart from the Miller Act also has no foundation. Plaintiffs point to no other statute providing for payment of compensation to the subcontractors by the United States. It is also clear that the plaintiffs have no proper claim for breach of contract against the United States, because, as subcontractors, they have no privity of contract with the government. It is well established that in the absence of a direct contract a subcontractor is not entitled to recover from the United States amounts owed to him by the prime contractor. *United States v.*

*Johnson Controls,* 713 F.2d 1541, 1550 (Fed.Cir.1983); *United Electric Corp. v. United States,* 227 Ct.Cl. 236, 240, 647 F.2d 1082, 1084 (1981); *Putman Mills Corp. v. United States,* 202 Ct.Cl. 1, 8, 479 F.2d 1334, 1337 (1973). In *United Electric Corp.,* 227 Ct.Cl. at 240, 647 F.2d at 1084, the court stated:

In the absence of a direct contractual link (express or implied in fact), no enforceable contractual right against the United States exists, and therefore a subcontractor,·in privity only with its private prime, cannot recover directly from the Government for amounts owed it by the prime. \* \* \* This requirement of privity of contract is one important basis for the statement in *United States v. Munsey Trust Co.,* 332 U.S. 234 [67 S.Ct. 1599, 91 L.Ed. 2022] (1947), that "nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation." *Id.* at 241 [67 S.Ct. at 1602].

\* \* \*

■ Plaintiffs attempt to overcome this well established rule by contending that they are intended third party beneficiaries of the government's prime contract with Miken. While it is true that this court has jurisdiction of a suit on a contract by an intended third-party beneficiary of a contract with the United States (*Hebah v. United States,* 192 Ct.Cl. 785, 792, 428 F.2d 1334, 1339 (1970)), it is difficult to see how these plaintiffs may be deemed third-party beneficiaries of the prime contractor's contract with the United States. To entitle one to sue as a third-party beneficiary of a contract to which he is not a party, the contract must reflect the intent not merely to benefit the third-party but also to give him the direct right to compensation or to enforce that right against the promisor. *German Alliance Ins. Co. v. Home Water Supply Co.,* 226 U.S. 220, 230, 33 S.Ct. 32, 35, 57 L.Ed. 195 (1912); *Robo Wash, Inc. v. United States,* 223 Ct.Cl. 693, 697–98 (1980); *Orchards v. United States,* 4 Cl.Ct. 601, 609–12 (1984), *appeal docketed,* No. 84–937 (Fed.Cir. Mar. 22, 1984); and *see*

**250**

*also* 4 A. Corbin on Contracts § 775 (1951). Nothing in the contract between the United States and the prime contractor shows any such intent. Nor have plaintiffs demonstrated any reason why the United States would have been willing to agree with Miken to pay the prime contractor's liability to its subcontractors if Miken and its designated surety failed to pay them, irrespective of whether or not the government had already fully paid the prime contractor. Plaintiffs point to nothing in the statutes or regulations which would even have authorized the contracting officer to agree to such a provision either expressly or implicitly.

The case for allowing these subcontractors to sue the United States directly as third-party beneficiaries of the prime contractor's contract with the United States is no stronger than the case of any other subcontractor who has been unsuccessful in his attempt to sue the United States for the debts of the prime contractor.

 Plaintiffs further argue that by awarding the contract to Miken and by authorizing it to proceed with performance prior to the time that the United States had fully investigated the soundness of the prime contractor's surety the United States breached a warranty to all subcontractors and suppliers that there would be a sufficient and valid payment bond. However, no such warranty can be found in any express or implied contract with the plaintiffs. In effect, plaintiffs are merely arguing for a new rule of law based on the negligence of government officials. Unfortunately for plaintiffs, however, the Tucker Act does not give jurisdiction to this court for a suit for money damages based on any such theory. Indeed, it states expressly that this court does not have jurisdiction of a suit for damages in cases sounding in tort.

### *Conclusion*

Defendant's motion for summary judgment is allowed. Plaintiffs' motion for summary judgment is denied. The clerk is directed to enter judgment for defendant, dismissing the complaint and awarding costs to the prevailing party.