**Lynn E. ERIKSON, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 589–86C.**

United States Claims Court.

July 31, 1987.

Leonard H. Bucklin, Bismarck, N.D., for plaintiff. Daniel S. Kuntz, of counsel.

Paul J. Ehlenbach, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. Plaintiff Lynn Erikson seeks money damages and equitable relief following his indefinite furlough from the position of Chief Judge of the Standing Rock Sioux Tribe in Fort Yates, South Dakota. Defendant argues that plaintiff's Complaint should be dismissed for lack of jurisdiction because plaintiff has failed to demonstrate adequate contractual or statutory bases for his claims.

## FACTS

In January of 1984, plaintiff was appointed Chief Judge of the Standing Rock Sioux Tribe (Tribe) by its Tribal Council. The Tribe and plaintiff then executed an employment contract, which included the judge's compensation and travel expenses. In May of that year, the Tribe amended its constitution to establish popular election of judges to four year terms, with provisions for removal from office only upon official misconduct or medical incapacity. In September, tribal elections were held, and plaintiff was elected by a substantial majority.

Shortly thereafter, in October of 1984, the Tribe entered into a funding agreement with the Bureau of Indian Affairs to operate and administer the criminal justice program on the Standing Rock Indian Reservation. Line item allocations of this agreement specified the office, salary, and travel expenses for the position of Chief Judge. The Bureau of Indian Affairs contracted to provide funding and to monitor expenditures and budget modification. The Tribe contracted to provide all personnel to perform the services required for the operation of the Tribal Court. The Bureau of Indian Affairs undertook no involvement and claimed no authority to alter or review these personnel decisions.

On June 4, 1985, the Tribe placed plaintiff on indefinite furlough effective June 22, 1985 due to lack of funds. Plaintiff subsequently filed an action in United States District Court for the Southern Division of North Dakota, against the Bureau of Indian Affairs, the Tribe, and four officials of the Bureau of Indian Affairs and the Tribal Council. The district court dismissed the action against the Tribal defendants on grounds of sovereign immunity and dismissed the action against the federal defendants for lack of jurisdiction. *Erikson v. Bureau of Indian Affairs,* No. Al–85–222 (D.N.D. July 14, 1986).

Plaintiff here seeks prorated annual salary from the effective date of his furlough to the present and reimbursement for travel expenses incurred from the date of notice to the effective date of his furlough. Plaintiff also seeks rescission of the funding agreement and a direction to the Secretary of the Interior and the Bureau of Indian Affairs to expend funds to employ plaintiff as Chief Judge of the Tribe.

## DISCUSSION

Defendant argues that plaintiff fails to state a claim within the limited jurisdiction of this court as set forth in the Tucker Act, 28 U.S.C. § 1491. Plaintiff offers three grounds for jurisdiction. First, plaintiff argues that the Tribe was acting within the scope of its authority as an agent of the United States when it entered into an employment contract with him and that he was, therefore, in privity with the United States under that contract.[1] Second, plaintiff alleges that he was an intended third party beneficiary of the funding agreement between the Bureau of Indian Affairs and the Tribe. Third, plaintiff claims that the Snyder Act, 25 U.S.C. § 13, mandates that the Bureau of Indian Affairs fund his employment. The following analysis results in the dismissal of plaintiff's Complaint because none of these arguments is sufficient to support jurisdiction.

---

1. This allegation saves plaintiff's case from fatal comparison with *Guerue v. Bureau of Indian Affairs,* No. 84–053 (D.S.D. Jan. 2, 1985). The *Guerue* court would not reach plaintiff's arguments in a case factually similar to the one at bar, because plaintiff had failed to allege privity at all.

## A. *Agency Claim*

■ Under the Tucker Act, the United States consents to be sued only by those with whom it has privity of contract. *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984); *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1550–51 (Fed.Cir.1983). Privity generally cannot successfully be asserted under a contract to which the United States is not a named party, but the requirement of privity may be met when the claimant contracts with a third party acting as an agent for the government. *See id.; Kern-Limerick, Inc. v. Scurlock,* 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed.2d 546 (1954); *Western Union Telegraph Co. v. United States,* 66 Ct.Cl. 38 (1928). Plaintiff alleges that he was in privity with the government because the Tribe was such an agent.

■ An agency relationship results when a party acts on behalf of another subject to such other's control and consent so to act. *In Re Shulman Transp. Enters. Inc.,* 744 F.2d 293, 295 (2d Cir.1984); Restatement (Second) of Agency § 1 (1957). Plaintiff cannot rely on the terms of his own employment contract to demonstrate control or consent. The named parties to that contract did not include the United States or any of its agencies. The execution and effectiveness of the contract were independent of any approval, supervision, or even knowledge of the federal government. There is no evidence of the establishment of an agency relationship in the funding agreement between the Bureau of Indian Affairs and the Tribe. Nowhere in the contract is the Tribe authorized to bind the government to any party other than the Tribe itself. More importantly, neither is the Tribe authorized to act in any way on the government's behalf. The sole reference to any component of the United States was a reference to federally prescribed rates of reimbursement for travel expenses.

Plaintiff offers a statutory basis for privity, relying on the language of 25 U.S.C. §§ 13 [2] and 450f(a).[3] Plaintiff contends that these statutes establish a chain of command, as it were, such that the Tribe carried out the obligations of the federal government rather than itself when it contracted with plaintiff. Plaintiff contends that 25 U.S.C. § 450f(a) authorizes the Secretary of the Interior to delegate the administration of programs by contract. The Bureau of Indian Affairs entered into a contract—the funding agreement—with the Tribe, and plaintiff further contends that this contract delegated a responsibility imposed upon the Secretary by 25 U.S.C. § 13. According to plaintiff, that statute obligates the Secretary to supervise, *inter alia,* the expenditure of funds to employ Indian judges like plaintiff. Plaintiff asserts by this construction that when the Tribe executed an employment contract with plaintiff, it acted as a duly authorized agent of the United States and fulfilled an obligation of its principal, the United States, rather than of itself.[4]

Plaintiff's argument is novel, but wholly unsupported by case law. The mere recita-

**2.** The pertinent part of this statute states that:
The Bureau of Indian Affairs, under the supervision of the Secretary of the Interior, shall direct, supervise, and expend such moneys as Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians throughout the United States for the following purposes:

 \* \* \* \* \* \*

For the employment of inspectors, supervisors, superintendents, clerks, field matrons, farmers, physicians, Indian police, Indian judges, and other employees.
25 U.S.C. § 13 (1982).

**3.** The pertinent part of this statute states:
The Secretary of the Interior is directed, upon the request of any Indian tribe, to enter into a contract or contracts with any tribal organization of any such Indian tribe to plan, conduct and administer programs, or portions thereof, provided for in sections 452 to 457 of this title, any other program or portion thereof which the Secretary of the Interior is authorized to administer for the benefit of Indians under sections 13 and 52a of this title

. . . .

25 U.S.C. § 450f(a) (1982).

**4.** The Court notes that the employment contract between plaintiff and the Tribe preceeded the execution of the funding agreement by at least nine months and his popular election by at least five months.

tion of statutes cannot make express what is only dubiously implied. As the United States Court of Appeals for the Federal Circuit recently held, even if an inference of implied agency could be drawn, some express manifestation of the government's direct liability must appear elsewhere among the facts. *See Johnson Controls,* 713 F.2d at 1551. The facts of plaintiff's case are devoid of express support for his claim; neither contract in this case purported to create or to operate pursuant to an agency relationship between the Standing Rock Tribe and the United States. Thus, plaintiff cannot establish privity of contract sufficient to ground jurisdiction on an agency theory.

## B. *Intended Beneficiary Claim*

 It is well established that this court may assert jurisdiction over claims brought by plaintiffs who are not named parties to, but rather are intended third-party beneficiaries of government contracts. *Hebah v. United States,* 192 Ct.Cl. 785, 428 F.2d 1334 (1970); *Busby School of the Northern Cheyenne v. United States,* 8 Cl.Ct. 596 (1985). Plaintiff here alleges that he was the intended third party beneficiary of the funding agreement between the Bureau of Indian Affairs and the Tribe.

A plaintiff who would allege third party status sufficient to ground jurisdiction here must demonstrate more than that he merely benefits from a contract to which he is not a party. *Penn Towne Builders, Inc. v. United States,* 4 Cl.Ct. 677, 682 (1984). Plaintiff must show "that the express or implied intention of any other parties to [the agreement] ... was to benefit *plaintiff*" specifically. *Id.* (emphasis in original); *see Busby,* 8 Cl.Ct. at 602; *Ables v. United States,* 2 Cl.Ct. 494, 500 (1983), *aff'd without opinion,* 732 F.2d 166 (Fed. Cir.1984). The contract must also reflect the intention of the parties to give the claimant "the direct right to compensation or to enforce that right against the promisor." *Baudier Marine Electronics v. Unit-*

*ed States,* 6 Cl.Ct. 246, 249 (1984), *aff'd without opinion,* 765 F.2d 163 (Fed.Cir. 1985) (citing *German Alliance Ins. Co. v. Home Water Supply Co.,* 226 U.S. 220 (1912)).

Plaintiff relies almost exclusively on a line item in the funding agreement to demonstrate that the Bureau of Indian Affairs and the Tribe specifically intended to benefit him personally. That line item allocates salary and expenses and specifies a position of Chief Judge. Plaintiff had been appointed by the Tribal Council and later had been elected by popular majority pursuant to the Tribe's constitution and he had served in that position for ten months prior to the execution of the funding agreement. These facts, plaintiff argues, show that he was *the* Chief Judge specifically intended by the parties to benefit from the agreement.

Plaintiff's argument is oversimplified. *A fortiori,* it does not reach the intent contemplated by *Hebah v. United States,* 192 Ct.Cl. 785, 428 F.2d 1334 (1970) and its progeny, which have allowed claims against the United States. In *Hebah,* an individual Indian woman was allowed to recover against the United States under a treaty between her tribe and the United States that obligated the United States to reimburse Indians for the acts of "bad men among the whites." [5] The court found that the killing of plaintiff's husband by a member of the Indian police on her reservation constituted the act of a "bad man" within the meaning of the treaty. Plaintiff could recover because the precise purpose of the treaty was to compensate Indians so injured. Though the treaty was not made with individual tribal members, it was clear that the intention of the express parties to the treaty was best furthered by the allowance of the claim. *Id.* at 1338; *see also Busby,* 8 Cl.Ct. 596, 602 (1985) (plaintiffs were not express parties to the agreement, but the court found that "the underlying policy behind the contracts ... of providing

---

5. By coincidence, the United States Court of Appeals for the Federal Circuit ruled on a case involving a companion treaty just one day before the instant opinion was filed. The court

upheld the Claims Court finding that the "bad men" clauses of the Indian treaties are still good law, even after 119 years. *Tsosie v. United States,* 825 F.2d 393 (Fed.Cir.1987).

Indian children on an Indian reservation with an education" was specifically intended to benefit the plaintiffs).

Plaintiff here cannot demonstrate that his benefit was the intent of the funding agreement, as intent was contemplated in *Hebah* and *Busby.* The sole purpose of the funding agreement, as expressly stated in the contract, was to benefit the Tribe. Clause 100.2 of that agreement states:

> 100.2—*PURPOSE:* The Contractor [Tribe] will operate and administer the Criminal Justice System for the purpose of providing due process on both civil and criminal cases in its area of jurisdiction pursuant to the Tribal Code and laws established for that purpose.

The intent evidenced by this clause of the funding agreement between the Bureau of Indian Affairs and the Tribe was to insure that the Tribe provided due process of law through its justice system. Though plaintiff may have benefitted from its administration, his personal employment, in the opinion of this court, was incidental to the purposes of the agreement.

Plaintiff's status is much more akin to the subcontractors who have been unable to recover against the government under contracts to which they were not parties. In *Baudier Marine Electronics,* 6 Cl.Ct. 246 (1984), the court found that a subcontractor was not the intended third party beneficiary of an agreement between the primary contractor and the United States. *Id.* at 249. Nothing in the contract, an agreement for maintenance dredging in Louisiana, indicated that the parties' intent was to provide a direct personal benefit to that subcontractor, though the subcontractor did in fact benefit from it. Similar findings denied the plaintiff a claim in *Penn Towne Builders, Inc. v. United States,* 4 Cl.Ct. 677 (1984), where a general contractor was not permitted to recover on a loan guarantee contract between the United States and the owner of a private housing project. In *Penn Towne,* the plaintiff could not show "that the express or implied intention of any of the other parties to the contract was to benefit *plaintiff.*" *Id.* at 682 (emphasis in original). To allow plaintiff in the case at bar to base a jurisdictional claim on the line item in a government funding agreement would extend the meaning of *Hebah* far beyond its intended boundaries; every subcontractor whose work was expressly mentioned in a prime contract could be considered a third-party beneficiary with standing to sue the federal government. Thus, this court is bound by well-established precedent that precludes it from asserting jurisdiction over a case in which plaintiff relies solely on a general line item in a funding agreement between two other parties.

## C. *Statutory Claim*

The Tucker Act alone does not afford a plaintiff a claim against the United States; it merely confers jurisdiction in this court where a substantive right already exists. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Grants of jurisdiction must be construed strictly, *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *Cosmic Constr. Co. v. United States,* 697 F.2d 1389, 1390 (Fed. Cir.1982), and the courts have evinced concern that the construction of statutes do not "expand liability beyond that which was explicitly consented to by Congress." *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1387 (Fed.Cir.1983), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). A claimant may, however, come to the Claims Court "if his claim is not frivolous but arguable." *Ralston Steel Corp. v. United States,* 169 Ct.Cl. 119, 125, 340 F.2d 663, 667, *cert. denied,* 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965). It is incumbent upon plaintiff, therefore, to demonstrate that "the legislation which [he] cites can be fairly interpreted as mandating compensation by the Federal Government for the damage sustained" by him. *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967); *see also, Testan,* 424 U.S. at 402, 96 S.Ct. at 955. Plaintiff argues that

25 U.S.C. § 13 may be so interpreted to afford him relief.

The language of section 13 demonstrates that Congress intended to benefit the Tribe. Plaintiff argues, however, that the express mention of Indian judges in the statute indicates that he was intended to benefit as well. Thus, plaintiff posits that he may look directly to the United States for his salary and other emoluments. Plaintiff has failed again, however, to provide the court with any arguments more substantial than an intuitive reading of the statute. Section 13 contains no provision that either protects plaintiff's employment or mandates payment of damages, so that plaintiff could successfully allege breach of any obligation by the federal government.

Plaintiff also tries to support his statutory claim by combining the previously discussed agency and third party beneficiary theories. He suggests that the Bureau of Indian Affairs exercised the discretion authorized in 25 U.S.C. § 450f(a), by which the Secretary may create an agency relationship by contract, to fulfill the mandate of 25 U.S.C. § 13, which specifies the intent of Congress to compensate Indian judges. By plaintiff's interpretation, the Tribe is merely an administrative conduit through which the federal government expends funds for the employment of Indian judges. Plaintiff's continued reliance on the reasoning of his previous claims, however, lends no support to his argument. As noted above, plaintiff's agency argument cannot stand, and plaintiff's concept of intended beneficiary status falls short of the concept under *Hebah*. Plaintiff's argument reduces the express purpose of section 13, the establishment of programming for the benefit of the Indian people, to one of mere mechanical compensation of a single judge. Plaintiff's statutory arguments therefore cannot "be fairly interpreted as mandating compensation by the Federal Government" and cannot sustain a jurisdictional claim in this court. *Eastport*, 178 Ct.Cl. at 607.

## CONCLUSION

Based upon the law, and upon the facts and arguments presented, the court must find that it is without jurisdiction to entertain plaintiff's suit. Accordingly, defendant's motion is granted and the Clerk is directed to enter judgement dismissing the Complaint. Costs to defendant.