989 F.2d 425
 25 Fed.R.Serv.3d 1220
 Elmer Leo LaBARON, Carol A. Christensen, Saundra Gardner
Brown, Elnora Christensen Chandler, Bruce C. Hendricks,
Dixie Christensen Malone, Christenia Hullinger, Earl S.
Denver, Kent Denver, Geraldine Buckalew, Roberta L. Denver,
and Susan Denver Gilbert, Plaintiffs-Appellants,
v.
UNITED STATES of America, and Louis W. Sullivan, Secretary
of the United States Department of Health and
Human Services, Defendants-Appellees.
 No. 92-4019.
 United States Court of Appeals,
Tenth Circuit.
 March 30, 1993.
 
 Kent A. Higgins, Idaho Falls, ID, for plaintiffs-appellants.
 Andrew C. Mergen, Dept. of Justice (Roger Clegg, Acting Asst. Atty. Gen. and Edward J. Shawaker, Dept. of Justice, with him on the brief), Washington, DC, for defendants-appellees.
 Before KELLY and SETH, Circuit Judges, and ALLEY, District Judge.
 PAUL KELLY, Jr., Circuit Judge.
 
 
 1
 Plaintiffs-appellants had received health services from an Indian Health Service (IHS) clinic since 1987. In early 1991, IHS announced and published its determination that the services had been provided to the Plaintiffs in error and its plan to terminate such services. According to IHS, Plaintiffs were "mixed-blood" Utes, not entitled to receive such services due to the Ute Termination Act of 1954.[1]
 
 
 2
 Plaintiffs claim that the IHS acted improperly by not granting a pretermination hearing. In addition, Plaintiffs claim that the Ute Termination Act violates their equal protection rights. The district court granted the government's motion to dismiss, agreeing that the Ute Termination Act applies to these Plaintiffs. Our jurisdiction arises under 28 U.S.C. § 1291 and we reverse.
 
 I. Jurisdiction
 
 3
 Defendant claims that the improperly captioned notice of appeal confers appellate jurisdiction only over Elmer Leo LaBaron. The notice of appeal named "Elmer Leo LaBaron et al." as the appellant, failing to complete the caption with the other Plaintiffs listed on the initial complaint. In Torres v. Oakland Scavenger Co., 487 U.S. 312, 315, 108 S.Ct. 2405, 2407, 101 L.Ed.2d 285 (1988), the Court held that parties must be specifically named as appellant in the notice of appeal to confer jurisdiction as to those particular individuals. However, this court has recognized that an appellant may cure an improper caption before the deadline for filing the notice of appeal has passed. Hubbert v. City of Moore, 923 F.2d 769, 771-72 (10th Cir.1991).
 
 
 4
 Because this appeal involves an agency of the United States, the rules would allow the notice of appeal to be filed within sixty days after the date of entry of the judgment or order appealed from. Fed.R.App.P. 4. Defendant claims that the corrective docketing statement, filed on February 18 "was therefore not received before 60-days had elapsed from the district court's December 18th judgment." However, sixty days from the date of the judgment would end on February 16, a Sunday. The next day, February 17, was a holiday. The docketing statement was filed the following day and thus is timely to cure any defect in the notice of appeal.
 
 II. Procedural Due Process
 A. The nature of Plaintiff's interest
 
 5
 Plaintiffs claim that the termination of benefits without an opportunity to be heard violated their procedural due process rights. Relying on Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Plaintiffs argue that, as recipients of government assistance, they had a right to a hearing before those benefits were terminated. If Plaintiffs were given the opportunity to present evidence, they contend that they would establish their eligibility to receive health benefits.
 
 
 6
 Goldberg involved the termination of public assistance payments without any opportunity for the recipient to present evidence or make a record. The Court posited that whether a pre-termination hearing was constitutionally required "depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication." Goldberg, 397 U.S. at 262-63, 90 S.Ct. at 1017-18. In the case of welfare, the Court determined, "termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits." Id. at 264, 90 S.Ct. at 1018. After considering the government's claimed interests, the Court concluded that "the interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens." Id. at 266, 90 S.Ct. at 1019.
 
 
 7
 IHS contends that no interest in a continuation of these benefits arose because the services were mistakenly extended to Plaintiffs. According to the IHS, the Ute Termination Act clearly eliminates any claim of eligibility the Plaintiff's may have had to the services. We find Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) instructive. There, the Court determined that there may be a protected interest in "those claims upon which people rely in their daily lives." Id. at 577, 92 S.Ct. at 2709. Moreover, property interests "are created and their dimensions are defined by ... understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. Plaintiffs claim that they had been receiving certain medical benefits and developed an expectation that such health care would continue to be available. Once assistance has been extended, a court considering the nature of the recipient's rights may consider that individual's interest in "uninterrupted assistance." Fox v. Morton, 505 F.2d 254, 256 (9th Cir.1974).
 
 
 8
 Clearly, health benefits have similar characteristics of urgency and necessity as welfare payments. If monetary sustenance is critical to the recipient, Goldberg, 397 U.S. at 264, 90 S.Ct. at 1018, services necessary to maintain physical health represent another critical benefit. See id. at 264, 90 S.Ct. at 1018 (medical care recognized as one purpose of welfare payments). The nature of health care benefits, coupled with the fact that the Plaintiffs had already received such benefits, leads us to conclude that some pre-termination hearing was necessary.
 
 B. Procedural process due to Plaintiffs
 
 9
 The Plaintiffs are therefore entitled to both notice and an opportunity to be heard. See Mathews v. Eldridge, 424 U.S. 319, 348-49, 96 S.Ct. 893, 909-10, 47 L.Ed.2d 18 (1976). This court is satisfied that timely and sufficient notice was provided to the Plaintiffs. Notice was published in the Federal Register, posted in the clinic patronized by Plaintiffs, and mailed to all patients whom IHS believed might be affected.
 
 
 10
 The missing component in this case was the opportunity for the Plaintiffs to be heard. A recipient in danger of losing benefits is entitled to a meaningful opportunity to state his position. Goldberg, 397 U.S. at 269, 90 S.Ct. at 1021. Plaintiffs contend that, given a chance, they will be able to show tribal membership. An informal setting will suffice, id., so long as both Plaintiff's eligibility and the government's interest in termination are properly considered. The hearing should "be tailored to the capacities and circumstances of those who are to be heard," id. at 268-69, 90 S.Ct. at 1020-21, but should include an opportunity for a recipient to state his position orally in a setting that ensures fairness. Mathews, 424 U.S. at 348, 96 S.Ct. at 909. An impartial decision maker should "state the reasons for his determination." Goldberg, 397 U.S. at 271, 90 S.Ct. at 1022.
 
 
 11
 IHS contends that the benefits were provided in error and that a hearing is unnecessary because the Plaintiffs clearly would not be entitled to continued medical care. This argument begs the question, however, because Plaintiffs counter that they could prove eligibility if given the chance. The IHS assumes the outcome of the hearing to support its conclusion that the hearing is not necessary. We hold, however, that a hearing is required because of the nature of the Plaintiffs' right, even if the final result is a termination of benefits.
 
 III. The Ute Termination Act
 
 12
 Plaintiffs also raise several equal protection challenges to the Ute Termination Act. Because we have decided that the Plaintiffs are entitled to a hearing and may be able to establish eligibility for health benefits, this argument is premature.
 
 
 13
 REVERSED.
 
 
 14
 FNThe Honorable Wayne E. Alley, United States District Judge for the Western District of Oklahoma, sitting by designation.
 
 
 
 [1]
 Codified at 25 U.S.C. §§ 677-677aa, the Ute Termination Act directed the tribe to prepare a proposed roll of full- and half-blood members to be approved by the Secretary and finally published in the Federal Register. After the mixed-blood list was developed and the federal restrictions on the property of the mixed-blood Utes were released, the Act provided that "such individual shall not be entitled to any of the services performed for Indians because of his status as an Indian." 25 U.S.C. § 677v. Section 667g made clear that "such rolls shall be final for the purposes of this subchapter, but said section shall not be construed ... as preventing future membership in the tribe, after August 27, 1954, in the manner provided in the constitution and bylaws of the tribe."