Stuart **ALLRED** and Kenneth Zufelt, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

**UNITED STATES, Defendant.**

No. 93–199 L.

United States Court of Federal Claims.

May 9, 1995.

Kent A. Higgins, Idaho Falls, ID, for plaintiffs.

Marc A. Smith, with whom was Myles E. Flint, Acting Asst. Atty. Gen., Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, DC, for defendant.

Barbara Hudson, U.S. Dept. of Health and Human Services, of counsel.

## *OPINION*

SMITH, Chief Judge.

This case comes before the court on defendant's motion to dismiss. Plaintiffs seek damages for the termination of health care services provided by the Indian Health Service (IHS), an agency within the Department of Health and Human Services. Plaintiffs allege that their health care services were terminated without due process of law since they were not given an opportunity to appeal the termination decision. In addition, plaintiffs claim that a temporary taking occurred because the health care benefits plaintiffs had been receiving were taken without just compensation.[1]

After careful review of the briefs filed by the parties and consideration of the oral argument held on April 13, 1995, the court concludes that it lacks subject matter jurisdiction to hear the merits of the plaintiffs' claim because neither the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act (APA), nor the other statutes invoked by the plaintiffs provide for

---

1. At oral argument plaintiffs' counsel stated that the health care services were terminated in 1991 and reinstated in 1993. Thus, the temporary taking claim covers approximately two years.

monetary relief. Therefore, the court must grant defendant's motion to dismiss these claims. In addition, the court has examined the plaintiffs' temporary taking and breach of trust claims, but has determined that the plaintiffs fail to assert the necessary elements for these claims. Therefore, the court must also grant the defendant's motion to dismiss the breach of trust and temporary taking claims for failure to state claims upon which relief can be granted.

## BACKGROUND

On April 2, 1993, plaintiffs Stuart Allred and Kenneth Zufelt, the descendants of terminated mixed-blood Utes,[2] filed this complaint and requested that it be certified as a class action. They alleged that on May 29, 1991, the United States, acting through the IHS, terminated the provision of health care services without offering them an opportunity to appeal the termination decision. Plaintiffs set out two major claims. First, plaintiffs allege that the IHS' failure to provide plaintiffs with notice, a hearing, and appeal rights violated the Due Process Clause of the Fifth Amendment to the United States Constitution and the APA. Plaintiffs cite the Snyder Act, 25 U.S.C. § 13 (1988), the Indian Health Care Improvement Act (IHCIA), 25 U.S.C. §§ 1601–1683 (1988), and the Indian Health Services Act (IHSA), 42 U.S.C. §§ 2001–2005 (1988), as the specific statutes that confer upon the plaintiffs the right to receive IHS' health care services. Second, they allege that the government violated its trust responsibility to provide such services to the plaintiffs.

On June 1, 1993, the United States filed a motion to dismiss. The United States sought to dismiss based on two major grounds: first, that this court lacks subject matter jurisdiction because the plaintiffs lack a sufficient property interest in the receipt of IHS' services that would mandate due process protection, and even if due process was required, such a violation does not give rise to a claim for damages; and second, plaintiffs failed to state a claim upon which relief could be granted.

Without filing a response to the United States' motion to dismiss, plaintiffs filed an amended complaint on July 15, 1993. In their amended complaint plaintiffs added a third count for a temporary taking. In this third claim plaintiffs argue that they are entitled to the value of the medical services denied between 1991 and 1993. This claim is based upon the theory that since plaintiffs relied upon the benefits once they were provided, and because medical care is a necessity, plaintiffs acquired a vested property right in the benefits even if the benefits were initially mistakenly provided. On November 3, 1993, the court issued an order to show cause why the instant case should not be dismissed in light of the court's ruling in *Tabbee v. United States,* 30 Fed.Cl. 1 (1993), *appeal dismissed,* 36 F.3d 1114 (Fed.Cir. Aug. 26, 1994). On January 4, 1994, plaintiffs filed their brief addressing this court's order, and the United States filed a response on January 27, 1994.

---

**2.** In accordance with the Ute Termination Act, 25 U.S.C. § 677a(c) (1988), and the Supreme Court's decision in *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), *reh'g denied,* 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692 (1972), *reh'g denied,* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972), the phrase terminated mixed-blood Ute is used. "No slur or offense whatsoever is intended." *Affiliated Ute,* 406 U.S. at 133 n. 3, 92 S.Ct. at 1462 n. 3. The plaintiffs refer to themselves in paragraph eight of their complaint as "descendants of Racially Terminated members of the Ute Indian Tribe." As this court noted in its decision in *Tabbee v. United States,* 30 Fed.Cl. 1, 3 (1993), *appeal dismissed,* 36 F.3d 1114 (Fed. Cir.1994):

[o]ne of the fundamental premises of the rule of law is to insure a color-blind society. The very symbol of the law, the blind-folded lady holding the scales of justice, depicts that justice means that all must be treated equally under the law regardless of who they are or how they appear. One of the great apparent anomalies of Indian law is that it is precisely based on race and genetic inheritance. However, the very concept of treating Indians differently than other American citizens for some purposes recognizes the unique status of Indian tribes as nations within our Nation. And of course, what distinguishes members of those tribes from other Americans has been their unique tribal inheritance. While it may go against the very grain of equal justice under law to base rights upon who one's parents are or were, it is an inevitable effect of recognizing fundamental rights in tribal groups as well as individuals.

## DISCUSSION

### I. Statute of Limitations

In *Tabbee v. United States, supra,* this court dealt with very similar claims represented by the same counsel. The plaintiffs in *Tabbee* were terminated mixed-blood members of the Ute Indian Tribe who claimed denial of benefits from the IHS. The court noted that the basis of the plaintiffs' case in *Tabbee* was "the enactment of the Ute Termination Act in August, 1954; the identification of plaintiffs as 'mixed-bloods' in April, 1956; and the Secretary's issuance of a termination proclamation in August, 1961." *Tabbee,* 30 Fed.Cl. at 4. *Tabbee* further stated that "plaintiffs' claims are based, not upon benefits denied apart from their termination from the Ute Indian Tribe, but rather, *as a consequence* of their termination." *Tabbee,* 30 Fed.Cl. at 5 (emphasis in original). This court concluded that the suit was barred by the statute of limitations because it should have been filed no later than August, 1967.[3]

■ In essence, the underlying claim in *Tabbee* was based on the Ute Termination Act itself. In the instant case, however, the plaintiffs do not challenge the underlying Ute Termination Act, and, under *Tabbee,* they would be barred by the statute of limitations from mounting such a challenge. Instead, plaintiffs assert that they are either full-blood Utes, or members of the Ute Tribe, or simply not terminated-mixed blood Utes. The basis for plaintiffs' contention is that in 1954 and 1961, both in the proposed rolls of mixed-blood Utes and final termination proclamation, plaintiffs, both of whom were born to mixed-blood parents prior to 1954, were not named on either the full-blood or mixed-blood rolls. Therefore, plaintiffs assert, because they were not specifically terminated, they must continue to be members of the Tribe. The court finds this interpretation of the statute to be erroneous.

The Ute Termination Act states that "any person claiming membership rights in the Tribe . . . within sixty days . . . may file an appeal with the Secretary contesting the inclusion or omission of the name of any person on or from either such proposed [full-blood or mixed-blood] rolls." 25 U.S.C. § 677g (1988). Plaintiffs did not challenge their omission from either roll within the sixty days, and similar to *Tabbee,* are now time-barred by the statute of limitations from challenging the listing provision of the Ute Termination Act. Therefore, plaintiffs cannot challenge their status. The issue then is whether plaintiffs are members of the full-blood Utes, terminated mixed-blood Utes, or some other group.

The court finds that partly for the purpose of determining eligibility for certain government programs the statute created only two classes of persons: full-blood Utes and mixed-blood Utes. No other class is contemplated by the statute. The plaintiffs are the children of persons who ultimately became terminated mixed-blood Utes. All descendants of mixed-blood Utes born subsequent to the publishing of the rolls would certainly also be terminated mixed-blood Utes. The IHS interpreted the Ute Termination Act by following the "longstanding IHS policy of not considering Indians terminated by Congress and their descendants (including mixed-blood members of the Ute Indian Tribe) to be eligible for IHS services." 56 Fed.Reg. 8355 (Feb. 28, 1991). The court concludes that it would vitiate the statutory scheme to allow children born to terminated mixed-blood Utes prior to the Ute Termination Act to somehow become full-blood Utes, while requiring children born to terminated mixed-blood Utes after the Ute Termination Act to remain terminated mixed-blood Utes. Although plaintiffs' names may not have been included on either roll, it seems that based on parentage plaintiffs could only be terminated mixed-blood Utes. Plaintiffs insistence that they are not terminated mixed-blood Utes is inconsistent with both the Ute Termination Act and the unique principles of tribal inheritance. Thus, plaintiffs' general

---

3. *See* 28 U.S.C. § 2501 (1988 & Supp. V 1993). Section 2501, as amended, states, in pertinent part: "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." The plaintiffs in *Tabbee* filed their claim on September 5, 1990, about 23 years after the statute of limitations expired.

claim that their denial of benefits is improper because they were not terminated under the Ute Termination Act challenges their status. Under *Tabbee*, such a challenge is barred by the statute of limitations.

However, the issue in the case at bar is whether the specific statutes cited by the plaintiffs create vested property interests, such that the termination of these interests without due process gives rise to a claim for damages against the United States. So, while *Tabbee* proves instructive regarding the history of the Ute Termination Act and the status of the parties, it is not dispositive because of the additional claim of a taking of a vested property right in the instant case that did not begin to accrue until 1991. The court finds that while plaintiffs are barred by the statute of limitations from challenging their status, they are not so barred from questioning whether they had any vested property right in the health care benefits provided by IHS.

To proceed to the merits of plaintiffs' case, however, this court must first determine whether it has subject matter jurisdiction; or more specifically, whether the Due Process Clause, the APA, and the statutes invoked by the plaintiffs give rise to a claim for monetary or any other relief this court is authorized by Congress to award. The court finds that the Due Process Clause, the APA, and the statutes invoked by the plaintiffs do not give rise to claims for damages or any other remedies which would fall within the jurisdiction of this court.

## II. Subject Matter Jurisdiction

Jurisdiction for claims presented to the United States Court of Federal Claims is governed by the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988 & Supp. V 1993), which states in pertinent part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or

unliquidated damages in cases not sounding in tort.

■ However, the Tucker Act is a waiver of sovereign immunity which relies upon a substantive right to money from the government for there to be jurisdiction in this court. Such a right must be found in the Constitution, a federal statute or regulation, or a contract with the government. *See United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983) (*Mitchell II* ). In *Mitchell II* the Court stated that a "claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Mitchell II,* 463 U.S. at 216–17, 103 S.Ct. at 2967 (quoting *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976), quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)). In the case at bar, plaintiffs' claims are based on the Due Process Clause of the Fifth Amendment to the United States Constitution and four federal statutes. Therefore, the court must inquire whether the Due Process Clause and any of these statutes mandate compensation before determining whether the plaintiffs have any compensable rights at stake.

### A. Due Process Clause

■ Plaintiffs claim that their due process rights were violated because they were not afforded an opportunity to appeal the IHS' decision to terminate certain health care services that the plaintiffs had been receiving. They seek damages in compensation. Case law clearly establishes that the Due Process Clause of the Fifth Amendment "neither explicitly nor implicitly obligate[s] the federal government to pay damages." *United States v. Connolly,* 716 F.2d 882, 887 (Fed.Cir.1983), (*en banc* ), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). This is well established law in this court. *See, e.g., Mullenberg v. United States,* 857 F.2d 770, 773 (Fed.Cir.1988); *Rybachek v. United States,* 23 Cl.Ct. 222, 224 (1991). Therefore, this court lacks jurisdiction to reach the mer-

its of this case under the Due Process Clause.

### B. Administrative Procedure Act

■ Similar to their due process argument, plaintiffs allege that the IHS violated the APA when it did not hold any hearing or allow plaintiffs any opportunity to object to the termination of services. It is also well established law in this court that a violation of the APA does not allow plaintiffs an opportunity to collect damages from the government. For example, in *Paskert v. United States*, 20 Cl.Ct. 65 (1990), this court, confronted with a claim for back pay under the APA, stated that its "jurisdiction is limited to claims for money presently due from the United States. *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). The APA, on the other hand, specifically provides that it does not establish jurisdiction over claims for money. 5 U.S.C. § 702 (1988)." [4] *Paskert*, 20 Cl.Ct. at 77.

Plaintiffs argue that the Tenth Circuit's decision in *LaBaron v. United States*, 989 F.2d 425 (10th Cir.1993), should govern the disposition of this case. In *LaBaron*, certain mixed-blood Utes sought the right to a hearing to prove their eligibility to receive certain health care services from the IHS. The Tenth Circuit held that health care services were as vital to the recipient as the welfare payments at issue in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and therefore the plaintiffs were entitled to a hearing to prove their eligibility. *LaBaron*, 989 F.2d at 427. This court finds that while there are numerous factual similarities, the case at bar is readily distinguishable from *LaBaron*. First, in *LaBaron*, the plaintiffs alleged that they could prove their eligibility given the opportunity to be heard. *Id.* As already noted, the plaintiffs in this case are not directly challenging their status, nor could they do so under *Tabbee, supra*. Second, even assuming *arguendo* that the plaintiffs are able to prove their eligibility, the most that they would be entitled to receive is a hearing, as the *LaBaron* plaintiffs were awarded, and not damages. *Id.* at 428. Because this court does not have jurisdiction to award plaintiffs a hearing, and plaintiffs are not entitled to damages, the court lacks jurisdiction under the APA to hear this claim.

### C. Snyder Act, Indian Health Care Improvement Act, and Indian Health Services Act

■ Plaintiffs, in order to ground their due process and APA claims in substantive law, argue that they have the right to continued medical care under the Snyder Act,[5] the IHCIA,[6] and the IHSA.[7] The Supreme

**4.** Section 702 states:
> **Right of review.** A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States *seeking relief other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party....

5 U.S.C. § 702 (1988) (emphasis added). *But see Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

**5.** The Snyder Act governs the general appropriations of the Bureau of Indian Affairs. It states in part: "The Bureau of Indian Affairs, under the supervision of the Secretary of the Interior, shall direct, supervise, and expend such moneys as Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians throughout the United States...." 25 U.S.C. § 13 (1988).

**6.** The Indian Health Care Improvement Act established the Indian Health Service as part of the Public Health Service. The Act states in part:
> The Congress hereby declares that it is the policy of this Nation, in fulfillment of its special responsibilities and legal obligation to the American Indian people, to meet the national goal of providing the highest possible health status to Indians and to provide existing Indian health services with all the resources necessary to effect that policy.

25 U.S.C. § 1602 (1988).

**7.** The Indian Health Services Act transferred responsibility for all hospitals and health care facilities under the control of the Bureau of Indian Affairs to the IHS. The Act specifically notes the discretionary nature of the services:
> whenever the health needs of the Indians can be better met thereby, the Secretary of Health and Human Services is authorized *in his dis-*

Court recently discussed two of those Acts in *Lincoln v. Vigil,* —— U.S. ——, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993). In *Lincoln,* handicapped Indian children entitled to receive care under the Indian Children's Program[8] brought suit when the IHS terminated the program without any hearings. The plaintiffs in *Lincoln* similarly alleged violations of the Snyder Act, the IHCIA, the APA, and the Due Process Clause. The Court held that "both the Snyder Act and [the IHCIA] likewise speak about Indian health only in general terms," and neither mandate that the IHS spend its general appropriations in any particular manner, save to improve Indian health. *Lincoln,* —— U.S. at ——, 113 S.Ct. at 2032, 124 L.Ed.2d at 113. Earlier, in *Erikson v. United States,* 12 Cl.Ct. 754 (1987), this court rejected an argument made by a class of plaintiffs that attempted to "reduce the express purpose of [the Snyder Act], the establishment of programming for the benefit of the Indian people, to one of mere mechanical compensation" for a specific group of individuals. *Erikson,* 12 Cl.Ct. at 759. The *Erikson* court went on to hold that the Snyder Act does not mandate the paying of damages. *Id.*

Plaintiffs in the instant case are similarly seeking damages for themselves as individuals because their health care benefits were terminated. Basing such a claim on the Snyder Act provides plaintiffs with no support because as *Erikson* noted the Act does not mandate compensation for claims by individuals. In *Lincoln,* the Supreme Court reached the same conclusion as the *Erikson* court with respect to the Snyder Act, and in addition, foreclosed the possibility of receiving damages for claims under the IHCIA. This court determines that the general and discretionary language in the IHSA suggests that this Act should be construed similarly to the interpretations of the Snyder Act and the

IHCIA adopted by the Supreme Court in *Lincoln* and this court in *Erikson.* Thus, this court finds that the IHSA does not allow monetary compensation to individuals denied health care services under a specific program. Unlike the typical entitlement provision, which provides that anyone who meets specified criteria is entitled to a specific amounts of benefits, the statutes relied upon by the plaintiffs are in essence discretionary lump-sum appropriations, "the very point of [which] is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln,* —— U.S. at ——, 113 S.Ct. at 2031. Therefore, because this court finds plaintiffs failed to prove that the Snyder Act, the IHCIA, or the IHSA are money mandating, this court lacks jurisdiction with respect to plaintiffs' claims under these statutes.

## III. Temporary Taking

 This court has jurisdiction over takings claims under the Fifth Amendment. The Takings Clause serves as the money mandating provision for jurisdiction under the Tucker Act. To state a takings claim a plaintiff must allege that the federal government has divested plaintiff of a legally recognized property interest without just compensation. At issue in the instant case is whether the plaintiffs have such a property interest.

Similar to their due process and APA claims, plaintiffs contend that the Snyder Act, the IHCIA, and the IHSA created a property right sufficiently vested to require just compensation to be paid when the IHS terminated their medical services. They rely primarily on a footnote in *Goldberg v. Kelly,* in which the Court stated that "[i]t may be

---

*cretion* to enter into contracts with any State, Territory, or political subdivision thereof, or private nonprofit corporation, agency or institution providing for the transfer by the United States Public Health Service of Indian hospitals or health facilities, including initial operating equipment and supplies.

42 U.S.C. § 2002 (1988) (emphasis added).

**8.** The Indian Children's Program was conceived by the IHS from a provision enacted as part of

the IHCIA by Pub.L. No. 94–437, section 201(c)(4)(D), 90 Stat. 1404, approved Sept. 30, 1976, which created "mental health ... therapeutic and residential health services". The Court in *Lincoln* noted that while a pilot program was established in 1978, Congress neither explicitly established such a program nor expressly appropriated funds for it. *Lincoln,* —— U.S. at ——, 113 S.Ct. at 2028.

realistic today to regard welfare entitlements as more like 'property' than a 'gratuity.'" *Goldberg,* 397 U.S. 254, 267 n. 8, 90 S.Ct. 1011, 1018 n. 8.

The property right recognized in *Goldberg* is a peculiar form of property that is procedural in nature. Sylvia A. Law, *Some Reflections on Goldberg v. Kelly At Twenty Years,* 56 BROOK.L.REV. 805 (1990) (noting that the property interest in due process afforded under *Goldberg* is procedural in nature and differs from a substantive property interest). Recipients of government benefits generally do not have a substantive property right to have these benefits continue. *Richardson v. Belcher,* 404 U.S. 78, 80–1, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971) (stating that "expectation of public benefits [does not] confer a contractual right to receive expected amounts.... the analogy between social welfare and 'property,' [*Goldberg* ] 397 U.S., at 267 n. 8, 90 S.Ct. at 1017, cannot be stretched to impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlements to public benefits."). *See also Bowen v. Public Agencies Opposed to Social Sec. Entrapment,* 477 U.S. 41, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986) (holding that rights in a government benefits program were not vested property for purposes of the Takings Clause of the Fifth Amendment). Instead, individual recipients have merely the limited property right to due process before essential public entitlements are terminated. What due process requires has varied with the type of entitlement at issue. *See, e.g., Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (stating that "[t]he dispute centers upon what process is due prior to the initial termination of benefits ... [i]n only one case, *Goldberg v. Kelly,* 397 U.S. at 266–271, 90 S.Ct. at 1019–1022, has the Court held that a hearing closely approximating a judicial trial is necessary."). However, the finding that the procedural right of due process requires, for example, a hearing does not mandate the further conclusion that the recipients have a property right to actually receive the benefits in question. Whether the individual is entitled to the benefits is a question to be decided by an agency decisionmaker within the confines of the due process procedures afforded the recipient. Thus, any right of the plaintiffs in the IHS health care benefits is merely procedural in nature, and does not constitute a property interest for the purposes of the Takings Clause. To hold that such entitlements are property protected by the Fifth Amendment would be to effectively say that such programs when passed may never be repealed. This would be a vast transfer of power from the democratic branches of our government to unelected courts. It would also freeze social and economic reform in a way that is fundamentally anti-democratic. This court must therefore dismiss plaintiffs' temporary taking claim on the ground that the plaintiffs have failed to state a claim upon which relief can be granted.

## IV. Breach of Trust

Plaintiffs allege that by terminating their benefits the government breached a general duty of trust that it owes Indian nations. The Supreme Court addressed the federal government's trust responsibility in *United States v. Mitchell,* 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (*Mitchell I* ) and *Mitchell II, supra.* In *Mitchell I,* tribal members sued the United States for breach of fiduciary duty, created by the trust relationship between the federal government and Indian nations, when it failed to properly manage timber resources on lands granted to them under the General Allotment Act. The Supreme Court held that the Act "created only a limited trust relationship between the United States and the allottee that does not impose any duty upon the government to manage timber resources." *Mitchell I,* 445 U.S. at 542, 100 S.Ct. at 1353. The Court examined the statute and found that:

when Congress enacted the General Allotment Act, it intended that the United States 'hold the land ... in trust' not because it wished the Government to control use of the land and be subject to

monetary damages for breach of fiduciary duty, but simply because it wished to prevent alienation of the land and to ensure that allottees would be immune from state taxation.

*Mitchell I,* 445 U.S. at 544, 100 S.Ct. at 1354.

In *Mitchell II, supra,* the Court clarified its holding in *Mitchell I* by finding that although the Act did not give rise to a fiduciary duty, the subsequently enacted statutes and regulations governing timber management did create such a duty. *Mitchell II,* 463 U.S. at 224, 103 S.Ct. at 2971–72. In holding that a fiduciary duty existed, the Court found the statutes and regulations at issue required that "virtually every stage of the process [be] under federal control," *Mitchell II,* 463 U.S. at 222, 103 S.Ct. at 2971, and that "all the necessary elements of a common-law trust [were] present: a trustee (the United States), a beneficiary (the Indian allottees), and a corpus (Indian timber, lands, and funds)." *Id.* at 225, 103 S.Ct. at 2972.

■ The case at bar clearly falls under the *Mitchell I* rather than the *Mitchell II* rationale. First, as already explained above, the statutes cited by the plaintiffs only create a general duty, similar to the General Allotment Act in *Mitchell I,* and do not provide that "virtually every stage of the process" of delivering health care to the plaintiffs be under the IHS' control. *See Lincoln,* ── U.S. at ──, 113 S.Ct. at 2033, 124 L.Ed.2d at 113 (stating that "whatever the contours of that [trust] relationship, though, it could not limit the [IHS'] discretion to reorder its priorities from serving a subgroup of beneficiaries to serving the broader class of all Indians nationwide."). Second, even assuming the first two elements of a trust (trustee and beneficiary) exist, there is no corpus over which the government exercises control. Plaintiffs point out no property interest or corpus that the government is required to manage under the statutes cited by them. The health of individual Americans of Indian descent is not property subject to government control or management. To so rule would be to deprive individual Indians of a fundamental liberty. However, a corpus or property interest is an essential element of a claim for breach of·trust. *See Begay v. United States,* 16 Cl.Ct. 107, 126–28 (1987), *aff'd,* 865 F.2d 230 (Fed.Cir.1988) (holding that "the existence of the general Indian-government trust relationship does not create a property interest where one does not otherwise exist."). Thus, because this court finds that the statutes in question only pertain to Indian health care generally and do not require that any tribal property be managed, plaintiffs have failed to establish the property element of a breach of trust claim. Therefore, the court must grant the defendant's motion to dismiss this claim for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons set forth above, the court grants defendant's motion to dismiss because this court lacks jurisdiction over plaintiffs' claim under the Due Process Clause, the APA, the Snyder Act, the IHCIA, and the IHSA. The court also grants the defendant's motion to dismiss for failure to state a claim upon which relief can be granted because plaintiffs failed to plead the necessary elements of a claim for a temporary taking or breach of trust. Plaintiffs' request for class action certification is dismissed as moot. The Clerk of the Court shall enter judgment dismissing the complaint.

**IT IS SO ORDERED.**