**CORBY HOMES LIMITED PARTNERSHIP, et al.,**
Plaintiffs,

v.

**The UNITED STATES, Defendant.**

No. 96–601C.

United States Court of Federal Claims.

May 8, 1997.

Charles S. Leone, South Bend, IN, for Plaintiffs.

Brian M. Simlin, Washington, DC, with whom were Assistant Attorney General Frank W. Hunger, and David M. Cohen, Director, for Defendant.

## OPINION

ROBINSON, Judge:

This case is before the court on defendant's motion to dismiss plaintiffs' complaint for lack of jurisdiction or, alternatively, for failure to state a claim upon which relief may be granted. Plaintiffs seek damages for breach of contract and Fifth Amendment regulatory taking.

The issues were fully briefed. On January 14, 1997, defendant filed its motion to dismiss. On February 20, 1997, plaintiffs responded to defendant's motion. Defendant filed its reply on March 24, 1997. Oral argument was held on April 29, 1997. For the reasons set forth below, the court grants defendant's motion to dismiss.

### Factual Background

Plaintiffs are owners of low- and moderate-income housing projects located in northern Indiana.[1] Plaintiffs participate in the federal mortgage insurance programs under sections 221(d)(3) and 236 of the National Housing Act, 12 U.S.C. 1715$l$ (d)(3), 1715z–1 (1994). Their participation began in the late 1960s and early 1970s through a series of contrac-

tual agreements, including mortgage notes given by plaintiffs to their private lenders to finance construction of the housing projects and under regulatory agreements between plaintiffs and the Federal Housing Administration ("FHA"). The regulatory agreements placed low-income affordability restrictions on plaintiffs' projects as long as FHA was obligated to insure their respective mortgages.[2]

The mortgages and other agreements prohibit prepayment by plaintiffs of the mortgage obligation before twenty years from the date of HUD's endorsement, except under certain specific conditions, including HUD approval of the prepayment. The mortgage notes further provide that, after making payments for twenty years, owners could prepay their mortgages in full without prior HUD approval. Plaintiffs have operated the housing projects under the regulatory agreements with HUD for more than twenty years.

In the late 1980s, Congress became concerned that a large number of owners might take advantage of the prepayment clause, which would reduce the supply of low-income rental housing. As a result, Congress enacted two pieces of legislation to counter the threat of massive prepayment. In 1987, the Emergency Low Income Housing Preservation Act ("ELIHPA"), 12 U.S.C. 17151 (note), was enacted and effectively placed a two-year moratorium on prepayments to give Congress time to develop a permanent solution to the potential loss of low-income housing.

In 1990, ELIHPA was replaced with the Low Income Housing Preservation and Resident Homeownership Act ("LIHPRHA"), which made the moratorium on prepayment permanent. See 12 U.S.C. 4101 et seq. LIHPRHA authorizes HUD to provide incentives to owners to maintain the affordability restrictions on their properties. To receive incentives, LIHPRHA requires owners

1. Plaintiffs include Corby Homes Limited Partnership, Hickory Creek Limited Partnership, Northway Manor Limited Partnership, Pin Oak Manor, Inc., Village Apartments Limited Partnership, Western Manor, Inc., Westgate Manor Limited Partnership, and Westgate Village Partnership.

2. FHA was subsumed into the Department of Housing and Urban Development ("HUD") in 1965. 24 C.F.R. 200.1 (1995).

to file a Notice of Intent ("NOI") with HUD as well as advise state and local housing authorities, mortgagees, and tenants. 12 U.S.C. 4102. LIHPRHA also requires each housing project to be appraised by two independent appraisers to determine its "preservation value," which would become the basis of any incentives offered to the owner. 12 U.S.C. 4103. After HUD provides the owner with a report containing the results of the appraisals and other information, the owner has six months to file a Plan of Action ("POA") with HUD indicating whether the owner wants to prepay the mortgage and terminate the affordability restrictions, request incentives to extend the affordability restrictions, or sell the property to a buyer who will maintain the affordability restrictions. 12 U.S.C. 4107.

Within 180 days of the filing of the POA, HUD must approve or disapprove the POA, if it is not deficient. 12 U.S.C. 4115(b). If a POA requesting incentives is approved after 180 days, LIHPRHA requires that the incentives be retroactive to 180 days after the filing of the POA. *Id.* 4115(c). The incentives allowed by LIHPRHA include authorization to increase the authorized annual rate of return, financing of capital improvements, and equity loans. 12 U.S.C. 4109. LIHPRHA allows an owner to seek relief in federal district court if HUD does not approve the POA within the statutory time limit. 12 U.S.C. 4115(c).

LIHPRHA has a number of provisions concerning POAs, which have been approved. LIHPRHA mentions that after a POA, which extends the affordability restrictions, is approved, "the Secretary shall, subject to the availability of appropriations for such purpose, enter into such agreements as are necessary to enable the owner to receive" the incentives. 12 U.S.C. 4109(a). If the Secretary of HUD approves a POA, but does not provide the approved assistance within fifteen months, the owner may terminate the affordability restrictions through prepayment or voluntary termination, subject to the provisions regarding assistance for displaced tenants. *Id.* 4114(a)(1)(A).

Each plaintiff in this case filed a POA, seeking incentives to maintain the affordabili-ty restrictions. At various times, HUD approved their POAs, but has not provided the incentives due to funding limitations. Among other things, the approval letters stated, "The Plan of Action (POA) is approved and effective upon execution of the Use Agreement and Amended Regulatory Agreement." *E.g., Compl., Ex.* B–1 at 1. The approval letters also stated, "Please advise if the terms of this letter are acceptable to the owners as it will be considered a revision to your Plan of Action received by this office . . . ." *Id.* at 4. On the same day they received their approval letters, plaintiffs each received a second letter advising that "[t]he Department currently does not have funds available to fund incentives for your Plan of Action. . . ." *E.g., Def.'s Mot. to Dismiss, App.* at 1. The second letter also noted, "The LIHPRHA statute provides that if we do not provide funding for these incentives within certain timeframes you may prepay without the Secretary's consent." *Id.* Plaintiffs filed their complaint in this court on September 25, 1996, seeking money judgments representing the incentives that they would have received had the funding occurred.

### Contentions of the Parties

Plaintiffs contend that HUD's acceptance of their POAs constituted express or implied contracts. Plaintiffs argue that all the elements of an express or implied contract exist, and a breach of the terms of that contract by the government makes defendant liable for damages. According to plaintiffs, the POA was a definite offer, which was unconditionally accepted by the government, and consideration moved to the government, when plaintiffs fulfilled their obligations under the contract by providing the government with low-income housing units under HUD's affordability restrictions. By failing to provide the incentives in the POAs, the government breached their contracts.

Plaintiffs further allege that defendant's action constitutes a regulatory taking of plaintiffs' properties by requiring them to abide by the terms of each POA and by failing to provide the incentives. Plaintiffs argue that although HUD has advised them that they may terminate the low-income af-

fordability restrictions, LIHPRHA limits HUD's discretion to approve prepayment and permit the owner to prepay the mortgage. *See* 12 U.S.C. 4108. LIHPRHA does not allow the Secretary of HUD to approve prepayment of a mortgage when it would cause economic hardship on the low-income tenants and add to the shortage of low-income housing within the community where the projects are located. In their complaint, plaintiffs submitted letters from local housing officials, stating that prepayment of the mortgages by plaintiffs and any subsequent conversion of the housing projects to market rate housing units would cause an increase in the shortage of housing available to low- and very low-income individuals and families. *See Compl., Exs.* C–1 to C–8.

Defendant seeks to dismiss plaintiffs' complaint. Defendant maintains that HUD's approvals of the POAs did not constitute a contractual commitment to provide LIHPRHA incentives. According to defendant, HUD's approval of the POAs represented a necessary step in the congressionally-mandated process toward consummation of agreements providing incentives. Because HUD never accepted a contractual commitment to fund or provide incentives, plaintiffs' complaint must be dismissed for lack of jurisdiction.

In response to plaintiff's regulatory taking allegations, defendant contends that plaintiffs do not have a constitutionally cognizable property right because HUD's approvals of the POAs did not constitute binding contractual commitments to provide LIHPRHA incentives. Alternatively, defendant argues that plaintiffs' allegations fail to state a valid taking claim because they are grounded upon HUD's allegedly unlawful conduct in breaching their agreements. Finally, defendant maintains that plaintiffs have failed to allege that any temporary taking deprived them of substantially all economic use of their properties.

## DISCUSSION

Under the rules of this court, the court's evaluation of a motion to dismiss for lack of jurisdiction is usually limited to the pleadings, and the unchallenged facts alleged in the complaint are deemed to be true and are construed in a light most favorable to plaintiff. *Cincinnati Elecs. Corp. v. United States,* 32 Fed. Cl. 496, 500 (1994); *see* Rule of the U.S. Court of Federal Claims ("RCFC") 12(b)(1). When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4), the factual allegations in the complaint are taken as true and all reasonable inferences are drawn in favor of the nonmoving party. *See Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986) (discussing Federal Rule of Civil Procedure 12(b)(6)); *Marshall v. United States,* 21 Cl.Ct. 497, 499 (1990). The court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Jurisdiction for claims presented to this court is governed by the Tucker Act, 28 U.S.C. 1491(a)(1) (1994). The Tucker Act provides jurisdiction for non-tort monetary claims against the United States, founded upon the Constitution, statute, regulation, or contract. *Curtis v. United States,* 33 Fed.Cl. 586, 589 (1995); *see* 28 U.S.C. 1491(a)(1). The Tucker Act is a waiver of sovereign immunity, which requires a substantive right to money from the United States for there to be jurisdiction in this court. *Allred v. United States,* 33 Fed.Cl. 349, 353 (1995). To establish jurisdiction, plaintiff must identify a contract or money-mandating constitutional, statutory, or regulatory provision that vests this court with jurisdiction. *See Sanders v. United States,* 34 Fed.Cl. 75, 78 (1995); *Allred,* 33 Fed.Cl. at 353.

## I. Breach of Contract Claim

Plaintiffs' first claim is for breach of contract. To establish a contract, plaintiffs must show a mutual intent to contract, including an offer, acceptance, and consideration. *Fincke v. United States,* 230 Ct.Cl. 233, 675 F.2d 289, 295 (1982); *Marshall v. United States,* 21 Cl.Ct. 497, 499 (1990). Plaintiffs argue that HUD's letters approving the POAs were contracts and that HUD's

refusal to fund the incentives breached those contracts. The language of the approval letters and the surrounding LIHPRHA provisions, however, show that HUD's approval of the POAs was not a binding contractual commitment to provide LIHPRHA incentives.

The approval letters demonstrate that they are not binding contracts. The letters contemplate a subsequent agreement effecting the POA. The letters state, "The Plan of Action (POA) is approved and effective upon execution of the Use Agreement and Amended Regulatory Agreement." *E.g., Compl., Ex.* B–1 at 1. The approval letter is not an acceptance but a revision to the POA. The letters note, "Please advise if the terms of this letter are acceptable to the owners as it will be considered a *revision* to your Plan of Action...." *Id.,* at 4 (emphasis added). This statement does not demonstrate a meeting of the minds that a contractual commitment was created by the approval letters. The language in the approval letters are consistent with the surrounding statutory provisions in LIHPRHA.

Before the Secretary of HUD may approve a POA seeking incentives, he must make detailed findings. *See* 12 U.S.C. 4112(a). The Secretary must determine whether the package of incentives is the least costly alternative for the government. Id, 4112(a)(1). In addition, project owners seeking incentives must make certain binding commitments. *See id.* 4112(a)(2). Plaintiffs argue that these binding commitments to maintain the affordability restrictions constituted consideration flowing to the government. According to plaintiffs, they made an offer with their POAs to maintain their housing units under the affordability restrictions in exchange for LIHPRHA incentives. Plaintiffs contend that HUD's approval letter was an acceptance of their offer. The court does not find that the approval letters formed a binding agreement to fund the incentives. LIHPRHA explicitly states, "Any agreement to maintain the low-income affordability restrictions for the remaining useful life of the housing may be made through execution of a new regulatory agreement, modifications to the existing regulatory agreement or mortgage, or, in the case of the prepayment of a mortgage or voluntary termination of mortgage insurance, a recorded instrument." Id. 4112(b). LIHPRHA contemplates a subsequent agreement following approval of the POA. The POA approval letters, which mention that the POAs are effective upon execution of later agreements, are consistent with LIHPRHA.[3]

Moreover, there must be appropriations available to fund the incentives before the Secretary can enter into an agreement to maintain the affordability restrictions. LIHPRHA explains, "After approving a plan of action from an owner of eligible low-income housing that includes the owner's plan to extend the low-income affordability restrictions of the housing, the Secretary shall, *subject to the availability of appropriations for such purpose,* enter into such agreements as are necessary to enable the owner to receive" the incentives. 12 U.S.C. 4109(a) (emphasis added). If the Secretary approves a POA but does not provide the incentives within fifteen months, an owner may terminate the low-income affordability restrictions through prepayment of its mortgage note or voluntary termination, "[n]otwithstanding any limitations on prepayment or voluntary termination under this subchapter."[4] *See id.* 4114(a)(1)(A). Because HUD did not fund plaintiffs' incentives *within fifteen months,*

---

**3.** Plaintiffs' case is distinguishable from *Cienega Gardens v. United States,* 33 Fed. Cl. 196 (1995). In *Cienega Gardens,* this court held that when the parties entered into the regulatory agreement, they also intended to be mutually bound by the prepayment rules in the rider to the contemporaneous deed of trust note. *Id.* at 210. This court held in *Cienega Gardens* that Congress, by enacting ELIHPA and LIHPRHA, breached the government's contract with plaintiffs with respect to their prepayment rights. IdIn the instant case, plaintiffs do not premise their contract theory upon their regulatory agreements and the con-

temporaneous deed of trust notes. Instead, plaintiffs argue that the POA approvals were contracts.

**4.** Section 4108 of LIHPRHA does not allow the Secretary of HUD to approve prepayment of the mortgage or voluntary termination of the mortgage insurance contract if it would materially increase economic hardship on current tenants or materially affect the supply of low-income housing in the community where the housing is located. 12 U.S.C. 4108.

plaintiffs are eligible to prepay their mortgage notes or voluntarily terminate the affordability restrictions without HUD's consent. Plaintiffs voluntarily complied with the affordability restrictions in the hope of receiving incentives. Unfortunately, Congress has not appropriated sufficient funds to provide those incentives. The court is constrained by the Anti–Deficiency Act, 31 U.S.C. 1341(a)(1), which prohibits federal agencies from entering into contracts in advance of appropriations.[5] Based on the court's reading of the approval letters and the surrounding LIHPRHA provisions, the court determines that HUD did not accept a contractual commitment to fund or provide the LIHPRHA incentives sought by plaintiffs. Therefore, HUD's failure to fund or provide these incentives was not a breach of contract.

## II. *Regulatory Taking Claim*

■■■■ Plaintiffs allege that HUD's failure to fund the POAs was a regulatory taking of their properties. A regulatory taking occurs if the government, by placing burdens on property owners, goes "too far" in interfering with rights incident to property ownership. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922); *Cienega Gardens v. United States,* 33 Fed.Cl. 196, 217 (1995). The basic elements to consider when determining whether a regulation goes "too far" include: (1) the character of the governmental action; (2) the economic impact of the government's action; and (3) the extent to which the government's action interferes with plaintiffs' distinct investment-backed expectations. *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978); *Cienega Gardens,* 33 Fed.Cl. at 217.

## A. *Cognizable Property Right*

■■■■ Before analyzing the *Penn Central* factors, a plaintiff asserting a Fifth Amendment taking must first show that the government's regulation affects a cognizable property right. See *Cienega Gardens,* 33 Fed.Cl. at 213. In other contexts, this court has held that an owner's contractual right to prepay its mortgage after twenty years without HUD approval constitutes a cognizable property right under the Fifth Amendment. *Id.* Unlike *Cienega Gardens,* plaintiffs in this case do not rest their taking claims upon their contractual right to prepay their mortgages. Instead, plaintiffs allege that HUD effected a regulatory taking of their alleged contractual rights to receive incentive payments according to the terms of the POAs. As discussed above, the POA approval letters did not constitute a binding contract to provide LIHPRHA incentives. Therefore, the alleged agreements between plaintiffs and defendant do not rise to the level of a property right.[6]

## B. *12 U.S.C. § 4108 and Limitations on Prepayment*

■■■ Plaintiffs also argue that the government has placed them between a "rock and a hard place" because they have neither the option of prepayment and termination of the affordability restrictions nor the LIHPRHA incentives for maintenance of the restrictions. Plaintiffs maintain that they cannot prepay their mortgages and charge market rents because LIHPRHA, 12 U.S.C. 4108, does not allow the Secretary of HUD to approve prepayment when doing so would cause economic hardship on low-income tenants and add to the shortage of low-income

---

**5.** Furthermore, to establish jurisdiction over their contract claims, plaintiffs must show that the government representative who entered into the agreement had actual authority to bind the United States in contract. *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990). Plaintiffs have not demonstrated that the Acting Chief of the Multifamily Asset Management Branch in HUD's Indiana State Office had authority to bind the United States.

**6.** To the extent plaintiffs' taking claim is premised upon HUD's allegedly unlawful breach of the POA agreements, this court does not have jurisdiction to consider such a claim. "It is well settled law ... that illegal acts of government officials cannot, by themselves, give rise to a taking which is adjudicable under the Tucker Act." *Anaheim Gardens v. United States,* 33 Fed. Cl. 24, 37 (1995); *see Alta Verde Indus., Inc. v. United States,* 18 Cl.Ct. 595, 602 (1989) ("Claims of unlawful Government action are outside this court's takings clause jurisdiction.").

housing in the community. Plaintiffs are incorrect as a matter of law. Section 4114(a)(1)(A) of LIHPRHA enables plaintiffs to prepay their mortgages and terminate the affordability restrictions, because the Secretary did not fund the incentives within fifteen months of the approval of the POAs. *See* 12 U.S.C. 4114(a)(1)(A). Moreover, the Housing Opportunity Program Extension Act of 1996 ("HOPE"), Pub.L. No. 104–120, 2, 110 Stat. 834 (1996), which restored the right to prepay, does not incorporate section 4108's prepayment criteria. Under HOPE, each plaintiff is presently qualified to prepay their mortgages and terminate the low-income affordability restrictions without HUD's consent, provided plaintiffs do not raise rents for sixty days following prepayment.[7] Therefore, section 4108 of LIHPRHA does not unreasonably burden plaintiffs' property rights within the meaning of the Fifth Amendment.

### C. *Temporary Taking*

 Plaintiffs further contend that they suffered a temporary taking because they maintained the affordability restrictions for fifteen months, until the time they became qualified to prepay their mortgages and terminate those restrictions without HUD's consent. To prevail on a temporary taking claim, plaintiffs must demonstrate that substantially all economic use of their property was denied during the period at issue. *Anaheim Gardens*, 33 Fed.Cl. at 36. Plaintiffs have not lost substantially all economic use of their properties because "plaintiffs continued to own the properties and to receive rents from tenants just as they had done since the properties were built and just as they do now." *Id.* at 37. As a result, plaintiffs have failed to show that they suffered a temporary taking by HUD.

### CONCLUSION

Plaintiffs have failed to state a valid contract claim or regulatory taking claim. Accordingly, defendant's motion to dismiss plaintiffs' complaint is GRANTED. The

7. Furthermore, Congress has provided for "section 8" tenant assistance in lieu of the owner-provided tenant displacement assistance under section 4113 of LIHPRHA. *See* Departments of

Clerk is directed to dismiss plaintiffs' complaint. No costs.

Veterans Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act of 1997, Pub.L. No. 104–204, Title II, 110 Stat. 2874, 2882–85 (1996).